GREEN BUS LINES, INC., Appellant, v CONSOLIDATED MUTUAL INSURANCE COMPANY, Respondent, et al., Defendants.

Second Department, April 14, 1980

138

---

## APPEARANCES OF COUNSEL

*Jerome Cooper (Douglas A. Cooper* of counsel), for appellant.

*Mudge Rose Guthrie & Alexander (John L. Altieri, Jr., Judah Gribetz* and *Donn A. Randall* of counsel), for respondent.

## OPINION OF THE COURT

DAMIANI, J.

This is a declaratory judgment action in which the plaintiff, Green Bus Lines, Inc. (hereinafter Green Bus), seeks a determination that the defendant Consolidated Mutual Insurance Company (hereinafter Consolidated or defendant) is obligated pursuant to a contract of insurance to defend and indemnify it in certain third-party actions which had been instituted against it. Two principal questions are raised on the appeal, one procedural, and one substantive. The first concerns whether Consolidated's failure to plead certain exceptions to the policy coverage as affirmative defenses constituted a waiver thereof. The second involves whether, if any or all of such exceptions were not waived, they relieve Consolidated of the duty to defend and indemnify plaintiff in the suits pending against it.

### THE FACTS

The plaintiff operates a bus line. It is a self-insurer with regard to workers' compensation and motor vehicle liability. With respect to its garages, Green Bus took out a premises liability policy with the defendant Consolidated.

On July 2, 1973 a Green Bus employee named Joseph Butler was injured in the company garage when certain chemical solvents ignited and burned him. Butler won a workers' compensation case against his employer and it paid the award. Thereafter Butler sued the manufacturer of the solvents, Union Oil Company of California, and the distributor, Commercial Solvents Corp., on a products liability theory. Those parties then commenced third-party actions against Green Bus. Both third-party complaints allege that the prime plaintiff, Butler, was an employee of Green Bus and that he was injured during the course of his work. The third-party complaint of Commercial Solvents Corp. alleges that Butler sustained injuries "at the premises known as the Green Bus Lines, Inc. garage". The third-party complaint of the Union Oil Company of California asserts in addition that Butler ws injured "when he was assigned by Green Bus Lines Inc. to use a certain liquid product to clean interior windows of buses at a garage located at 147th Street and Rockaway Boulevard". The third-party complaints also alleged that in the event Butler recovered against the third-party plaintiffs, then they, in turn, would have claims over against Green Bus based on

indemnity for its negligence in, *inter alia,* failing to provide Butler with a safe place to work and in failing to properly instruct him in the proper use of the solvent.

Green Bus demanded that Consolidated defend and indemnify it in connection with the third-party actions. Consolidated refused and Green Bus commenced this action for a declaratory judgment alleging that Consolidated had issued a policy of insurance covering injuries occurring at its garage and that Butler was injured while working in the garage during the course of his employment. Consequently, Green Bus claimed that defendant had the duty to defend the third-party actions and to indemnify it in the event that it was held liable. The complaints in the two third-party actions were annexed to and made a part of the allegations of the complaint of Green Bus in the instant declaratory judgment action. The answer of defendant Consolidated admitted the existence of the policy, denied the other material allegations of the complaint and claimed that it provided no coverage with respect to the third-party actions.

The contract of insurance between the parties covers the garage premises at which Butler was injured and states:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. bodily injury or

"B. property damage

"to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent".

Following this broad coverage provision the policy sets forth a lengthy list of exclusions from policy coverage. Three of the exclusion provisions arguably apply to the case at bar. They state, in relevant part:

"This insurance does not apply: * * *

"(b) to bodily injury or property damage arising out of the ownership, *maintenance,* operation, use, loading or unloading of

"(1) any automobile * * * owned or operated by * * * any insured * * *

"(i) to any obligation for which the insured or any carrier as

his insurer may be held liable under any *workmen's compensation* * * * law;

"(j) to *bodily injury to* any *employee* of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to *indemnify* another because of damages arising out of such injury" (emphasis added).

## THE PROCEDURAL ISSUE

At the trial of this action, Consolidated sought to rely upon the three above-quoted exceptions to policy coverage and Green Bus contended that they had been waived because defendant had failed to assert them as affirmative defenses in its answer. Plaintiff's contention was implicitly rejected by the trial court because it held that certain of the exclusions were applicable.

■ The principal object of plaintiff's present action for a declaratory judgment is to compel its insurer to provide it with a defense in the third-party actions. An insurer's duty to provide its insured with a defense is a heavy one and is broader than its duty to pay *(Goldberg v Lumber Mut. Cas. Ins. Co. of N. Y.,* 297 NY 148, 154; *International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 326). The policy in this case provides that Consolidated has the duty "to defend any suit against the insured seeking damages on account of [bodily injury to which the insurance applies] * * * even if any of the allegations of the suit are groundless, false or fraudulent". The insurer's duty to defend under such a clause is generally to be determined by an examination of the allegations of the complaint in the underlying action regardless of whether those allegations square with objective truth or are utterly false or groundless *(Goldberg v Lumber Mut. Cas. Ins. Co. of N. Y., supra,* pp 153-154). In order to successfully maintain an action to compel its insurer to undertake the defense of the third-party actions pending against it, Green Bus was required to plead and prove that the allegations of the complaint in the underlying action arguably refer to a case of bodily injury within the broad coverage provision of the policy. Consequently, all plaintiff had to show was that the underlying third-party complaints alleged that Butler suffered bodily injury due to an accident on the insured premises, that Butler had sued the third-party plaintiffs and that they had, in turn, made a claim over against it on a theory of indemnity (cf. *Sachs v American Cent. Ins. Co.,* 33 Misc 2d 816, 819-820, mot

to vacate decision den 34 Misc 2d 687, 689-692, affd 19 AD2d 538). Both third-party complaints meet this test.

In addition to the broad coverage provision, insurance policies often contain certain exceptions which are "inserted in the contract for the purpose of withdrawing from the coverage of the policy, as delimited by the general language describing the risk assumed, some specific risk which the underwriter declares himself unwilling to undertake" (Vance, Insurance [2d ed], pp 405-406, as quoted in *Agricultural Ins. Co. v A. Rothblum, Inc.,* 147 Misc 865, 867). The New York cases impose upon the insurer the burden of proving that the incident and claim thereunder come within the exclusions of the policy *(International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 327, *supra; Prashker v United States Guar. Co.,* 1 NY2d 584, 592; *Wagman v American Fid. & Cas. Co.,* 304 NY 490). In the *International Paper Co.* case *(supra,* p 325), the Court of Appeals observed that "if the insurer is to be relieved of a duty to defend it is obligated to demonstrate that the allegations of the [underlying negligence] complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto,* are subject to no other interpretation."

Having established that the insurer has the burden of proving the applicability of the policy exclusions, the question then is whether it must plead such exclusions as affirmative defenses. CPLR 3018 governs the pleading of affirmative defenses, stating in relevant part: "(b) Affirmative defenses. A party shall plead all matters which if not pleaded would be likely to take the adverse party by surprise or would raise issues of fact not appearing on the face of a prior pleading". The existence of exceptions to the policy certainly may not be said to take Green Bus by surprise since it had a copy of the policy which was annexed to and made a part of its complaint (see Siegel, New York Practice, § 223, p 268, where it is observed that few defenses could satisfy the surprise criterion; cf. *Carlson v Travelers Ins. Co.,* 35 AD2d 351, 353-354; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3018.16, p 30-416). Accordingly, if Consolidated had an obligation to plead affirmatively in this regard it was because of the second criterion set forth in CPLR 3018 (subd [b]), namely, the requirement that it plead any matter not appearing on the face of plaintiff's complaint.

To the extent then that Consolidated sought to rely upon

the allegations of the third-party complaints to establish the applicability of the exclusions absolving it of a duty to defend the third-party actions, it did not have to plead the exclusions as an affirmative defense for the simple reason that those allegations were made a part of the Green Bus complaint. Had Green Bus merely alleged facts bringing the third-party actions within the general coverage clause and not incorporated the allegations of the third-party complaints into its own compalint, then Consolidated would have had to specifically plead as an affirmative defense that the allegations of those third-party complaints established the applicability of exceptions to coverage (cf. *Agricultural Ins. Co. v A. Rothblum, Inc.,* 147 Misc 865, *supra; Tidewater Oil Co. v American S. S. Owners Mut. Protection & Ind. Assn.,* 156 Misc 367, 376; *Zeller v Preferred Mut. Fire Ins. Co.,* 9 Misc 2d 855, 859; *Sachs v American Cent. Ins. Co.,* 33 Misc 2d 816, 819-820, mot to vacate decision den 34 Misc 2d 687, affd 19 AD2d 538, *supra; Balogh v Jewelers Mut. Ins. Co.,* 167 F Supp 763, 769, affd *sub nom. Jewelers Mut. Ins. Co. v Balogh,* 272 F2d 889, 891-892; *Chase Rand Corp. v Central Ins. Co. of Baltimore,* 63 F Supp 626, 629, affd 152 F2d 963; accord *O'Connell v New Jersey Fid. & Plate Glass Ins. Co.,* 201 App Div 117, 119-121, affd 235 NY 583; *Danerhirsch v Travelers Ind. Co.,* 202 App Div 207, 208; *Van Valkenburgh v American Popular Life Ins. Co.,* 70 NY 605; 19 Couch, Insurance 2d, § 76:197; 44 Am Jur 2d, Insurance, § 1947). The insurer may not plead or prove facts which controvert or resolve ambiguities in the allegations of the underlying complaint or which independently establish the applicability of an exclusion to coverage so as to absolve it of its duty to defend *(Sims v Illinois Nat. Cas. Co.,* 43 Ill App 2d 184; cf. *Brooklyn & Queens Allied Oil Burner Serv. Co. v Security Mut. Ins. Co.,* 27 Misc 2d 401, and cases therein cited; *McFadyen v North Riv. Ins. Co.,* 62 Ill App 2d 164; Ann. 50 ALR2d 458, § 17, pp 497-498, n 15). Accordingly, we hold that Consolidated was under no duty to plead the exclusions to coverage as an affirmative defense because it was required to test the applicability of those exclusions solely upon the basis of the allegations of the third-party complaints which were annexed to and made a part of the plaintiff's own complaint in this action.

## THE SUBSTANTIVE ISSUE

We now turn to an examination of the specific exclusions

and the allegations of the third-party complaints which relate thereto. If the allegations of those third-party complaints establish the applicability of any one of the exclusions, Consolidated will be relieved of its duty to defend (see *Riviera Beach Volunteer Fire Co. v Fidelity & Cas. Co. of N. Y.,* 388 F Supp 1114, 1120-1123; *G & T Crane Serv. v Employers Mut. Liab. Ins. Co. of Wis.,* reported *sub nom. Bandy v Avondale Shipyards,* 458 F2d 900, 903-904; *Jarvis v Indemnity Ins. Co. of North Amer.,* 227 Ore 508; *McDonald v United Pacific Ins. Co.,* 210 Ore 395; cf. *Soper v Fidelity & Cas. Co. of N. Y.,* 198 Misc 1117).

■ ■ The allegations of the third-party complaint of Commercial Solvents Corp. clearly do not establish the applicability of the automobile maintenance exclusion. However, the allegation in the third-party complaint of the Union Oil Company of California that Butler's injury occurred "when he was assigned * * * to use a certain liquid product to clean interior windows of buses" arguably refers to maintenance. A close examination of the language in question reveals that it does not unequivocally allege that the accident happened during the course of the work. Instead it claims that the accident happened when Butler was "assigned" to clean the bus · windows. This language of the Union Oil third-party complaint contains an ambiguity in that under the alleged facts it could have been proven that the accident happened at the time Butler was assigned to clean the bus windows but before the maintenance work began.[1] All doubts and ambiguities as to whether the allegations of a complaint come within the coverage of the policy are to be resolved in favor of the insured *(Commercial Pipe & Supply Corp. v Allstate Ins. Co.,* 36 AD2d 412, affd 30 NY2d 619; *Pow-Well Plumbing & Heating v Merchants Mut. Cas. Co.,* 195 Misc 251, 255-256; *Keats v Moss,* 5 Misc 2d 571; 31 NY Jur, Insurance, § 1324) and, accordingly, we must deem the allegation in question to mean that the accident happened before the maintenance work began. Although it appears that the insurer is in possession of certain proof concerning the happening of the accident, it may not adduce such proof to controvert or resolve ambiguities in the allegations of the underlying complaint so as to establish

---

1. There is no question that Butler was injured during the course of his employment. The issue is whether the work he was performing at the time of his injury constituted automobile "maintenance" within the meaning of that term as used in the contract of insurance.

the applicability of the automobile maintenance exclusion (cf. *Sims v Illinois Nat. Cas. Co.,* 43 Ill App 2d 184, *supra).* While this rule is harsh it is in accord with the general principle that where the allegations of the underlying complaint plead a case which potentially comes within the coverage of the policy, the insurer must provide a defense *(Brooklyn & Queens Allied Oil Burner Serv. Co. v Security Mut. Ins. Co.,* 27 Misc 2d 401, *supra).* We therefore hold that the applicability of the automobile maintenance exclusion of the policy has not been established.

We turn now to a consideration of exclusions (i) concerning "workmen's compensation" and (j) concerning bodily injury to employees and the insured's obligation to indemnify another for damages arising out of such injury.

The Green Bus complaint alleges that its employee Butler was injured during the course of his employment and that it had been the subject of third-party suits seeking indemnification. Similar allegations are contained in the two third-party complaints to the effect that Butler was employed by Green Bus and was injured in the course of his work. Consolidated's position is simply that given the conceded truth of these allegations it has no duty to defend or indemnify plaintiff by reason of exclusions (i) and (j).

In the case of *Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co. of N. Y.* (45 NY2d 551), the plaintiff in the underlying suit, a man named Wacht, was a passenger in an automobile which was driven by his coemployee Carr and which collided with another vehicle. Wacht sued the owner and driver of the other vehicle to recover for his personal injuries upon the ground of negligence. They in turn brought a third-party action against Carr and Wacht's employer, the Chimes Cake Company, seeking equitable apportionment of fault pursuant to *Dole v Dow Chem. Co.* (30 NY2d 143). Graphic Arts Mutual Ins. Co., the automobile insurance carrier for Chimes, disclaimed liability on the basis of two exclusions in its policy which were essentially the same as exclusion (i) and the first part of exclusion (j) contained in the policy in the instant case.

■ The *Graphic Arts* case clearly disposes of the applicability of exclusion (i), which provides that the insurance issued by defendant does not apply "to any obligation for which the insured * * * may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or any similar law". Chief Judge Breitel's opinion in the

*Graphic Arts* case states in this regard *(supra,* p 558): "Similarly unavailing is Graphic's resort to paragraph (e), which excludes 'any obligation for which the insured * * * may be held liable under any workmen's compensation * * * law. That Chimes [the employer] is obligated to Wacht, as a covered employee, under the Workers' Compensation Law is undisputed. As noted by the Appellate Division, however, the liability at issue is not one owed to Wacht, but to third parties for the apportioned negligence of a coemployee of Wacht. Even though it is an employee who is injured, the Workers' Compensation Law does not require the employer to contribute to a nonemployee joint tort-feasor the share of damages apportioned to the coemployee tort-feasor."

█ Thus the only remaining question in this case is the applicability of exclusion (j) which can be divided into two parts. The first part provides that the insurance does not apply "to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured". The Green Bus complaint in this case admits that Butler was injured during the course of his employment. The question then is one of law. Given the conceded fact that Butler was employed by plaintiff and was injured in the course of his work, does this portion of exclusion (j) relieve the defendant of the duty to defend and indemnify plaintiff in a third-party action resulting from Butler's suit against the solvent maker and distributor? The *Graphic Arts* case answers this question in the negative.

In *Graphic Arts* the Court of Appeals disposed of the bodily injury to an employee exclusion by holding that the third-party action did not seek to recover for such an injury, but rather sought equitable apportionment based on relative culpability thereby affecting the distributive responsibilities of tort-feasors *inter sese* (citing *Dole v Dow Chem. Co.,* 30 NY2d 143, 152-153, *supra).* Accordingly, the court concluded that the third-party action against the employer did not legally assume the color of the personal injury claim of its employee asserted against the third-party plaintiff *(Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co. of N. Y.,* 45 NY2d 551, 557, *supra).*

In my opinion, *Graphic Arts* may not be distinguished upon the ground that there the third-party action sought to subject the employer to vicarious liability (passive negligence) for the fault of its employee Carr who was driving the company car involved in the accident, whereas here the third-party com-

plaints seek to hold Green Bus for its own active negligence in failing to provide Butler with a safe place to work and in failing to instruct him concerning the proper use of the solvent. The *ratio decidendi* of *Graphic Arts* is the holding of the *Dole* case *(supra)* that such third-party actions are based on a separable legal right to equitable apportionment among tort-feasors which does not assume the color of the injured party's claim. *Dole* is factually indistinguishable from the case at bar.

In *Dole* the plaintiff's decedent was killed after he entered a grain storage bin which had been sprayed by his employer with a poisonous fumigant. His administratrix sued the manufacturer of the fumigant alleging products liability because of its failure to properly label the product. The manufacturer brought a third-party action against the decedent's employer alleging in essence that the fumigant was properly labeled and that the employer was actively negligent in failing to heed the warnings and follow the instructions on the label and in failing to test and aerate the premises after the fumigation (30 NY2d, at p 146). Thus, the conclusion of *Dole* that a third-party complaint alleging active negligence is separable from the theory of liability upon which the main action is predicated, applies directly to the instant case and for that reason the first part of exclusion (j) is inapplicable.

█ Unlike the policy in *Graphic Arts,* the insurance contract in the case at bar contains additional language concerning bodily injury to employees. The remainder of exclusion (j) provides that the policy does not cover "any obligation of the insured to indemnify another because of damages arising out of [bodily injury to an employee]". In my opinion this exception to the policy applies in the present circumstances and requires affirmance of the judgment appealed from adjudging that defendant is *not* obligated to defend or indemnify Green Bus. In order to address this issue it is necessary to examine the respective theories of contribution and indemnity as they existed prior to *Dole v Dow Chem. Co.* (30 NY2d 143, *supra),* the effect of that case upon those theories and its impact upon the contract of insurance made by the parties.

The theory of contribution at common law is that one who is compelled to pay more than his aliquot share of an obligation upon which several persons are equally liable is entitled to contribution from the others to obtain from them payment of their respective shares *(Asylum of St. Vincent de Paul v*

*McGuire,* 239 NY 375). The *sine qua non* of contribution is the existence of a common burden, obligation or liability *(Asylum of St. Vincent de Paul v McGuire, supra;* 10 NY Jur, Contribution, § 3) and another salient feature is the rule that, generally, all co-obligors must contribute equally in discharging their common obligation (10 NY Jur, Contribution, § 11; *Egbert v Hanson,* 34 Misc 760; Ann. 64 ALR 213). The most frequent application of the doctrine is found in the case of cosureties although it is not confined to that relationship (10 NY Jur, Contribution, § 4). The common law made an exception to the general applicability of the doctrine of contribution in the case of joint tort-feasors. Where an injured party recovered a judgment against two or more joint tort-feasors and one defendant paid more than his pro rata share, he had no right to seek contribution from his codefendants *(Peck v Ellis,* 2 Johns Ch 131; *Merryweather v Nixan,* 8 Term Rep 186, 101 Eng Rep 1337). It was considered against public policy to settle a dispute between two wrongdoers or to allow one to plead his own tort as part of his cause of action *(Gilbert v Finch,* 173 NY 455, 462; 1936 Report of NY Law Rev Comm, Contribution Among Tort-Feasors, pp 713, 719-720; Note, Negligence-Apportionment of Damages Among Joint Tort-Feasors —Right of a Person Actively Negligent to Implead a Co-wrongdoer, 41 Fordham L Rev 167). For these reasons a defendant in a tort case could neither implead a third party whom he alleged to be liable with himself to the plaintiff, nor could he, after satisfying a judgment, bring a separate suit against his joint tort-feasor to recover the latter's pro rata share of the amount paid to the injured party on a theory of contribution *(Putvin v Buffalo Elec. Co.,* 5 NY2d 447; Note, 41 Fordham L Rev 167, and cases therein cited; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C1401:1, p 361).

In 1928 the Legislature amended the Civil Practice Act by adding thereto a new section, 211-a, the primary object of which was to partially abrogate the common-law rule denying contribution between joint tort-feasors (L 1928, ch 714; see Note, 16 Cornell LQ 246). This statute made recovery of a money judgment against both tort-feasors an express condition precedent to recovery and permitted the defendant who paid more than his pro rata share to obtain contribution from his codefendants (see Siegel, New York Practice, § 174, pp 214-215). In 1963 this statute became former CPLR 1401.

Where an injured party sued less than all the persons potentially liable, the law gave the named defendants no recourse against the unnamed tort-feasors on a theory of contribution but it did potentially afford them a right to recover on a theory of indemnity. The right of indemnity in such situations sprang from a contract implied in law that where one party was compelled by a judgment to respond in damages for the wrongful act or neglect of another, he might seek recovery against the actual party by whose act or neglect the injury was produced *(Westchester Light. Co. v Westchester County Small Estates Corp.,* 278 NY 175). The purpose of the rule was to prevent unjust enrichment of the wrongdoer at the expense of one who had been held to vicariously respond for the former's negligence *(Fox v Western N. Y. Motor Lines,* 257 NY 305; *McFall v Compagnie Maritime Belge [Lloyd Royal] S. A.,* 304 NY 314, 327-328; *Putvin v Buffalo Elec. Co.,* 5 NY2d 447, 454-455, *supra).* Indemnity involved no apportionment of responsibility; it was all or nothing. It shifted the whole economic burden from the party only "passively" negligent to the one "actively" negligent in causing the loss *(Bush Term. Bldgs. Co. v Luckenbach S. S. Co.,* 9 NY2d 426; 28 NY Jur, Indemnity, § 15; Comments, Indemnity Among Joint Tort-Feasors in New York: Active and Passive Negligence and Impleader, 28 Fordham L Rev 782; Note, The New Right of Relative Contribution: *Dole v Dow Chemical Co.,* 37 Albany L Rev 154, 159-164). The doctrine had no application to persons *in pari delicto* and a defendant could not recover against a codefendant or an impleaded third-party defendant where the evidence established that they were both guilty of active negligence in causing the plaintiff's injuries *(Osgood v Winkelman Co.,* 274 App Div 694, 701; 1952 Report of NY Law Rev Comm, Contribution Among Tort-Feasors, pp 37-39; see Note, Torts—New York Civil Practice, 47 NYU L Rev 815-816).

Such was the state of New York law when on October 7, 1970 the policy of insurance involved in the case at bar became effective. At that time Green Bus could not be held liable for contribution to another where their active negligence combined to produce injury to one of its employees because an essential condition precedent to contribution was the recovery of a joint judgment against both tort-feasors by the injured employee and this was not possible because of the exclusive remedy of workers' compensation (see Workers' Compensation Law, § 11). The only possible liability to which

Green Bus might be exposed for injury to one of its employees, other than the payment of workers' compensation benefits, was the obligation to indemnify another held vicariously liable for its own active negligence. The contract of insurance expressly excluded from coverage this potential derivative liability for injury to employees in the following unambiguous language: "This insurance does not apply * * * (j) * * * to any obligation of the insured to indemnify another because of damages arising out of [bodily injury to any employee of the insured]".

On March 22, 1972, during the term of the policy and before the happening of the accidental injury to Butler, the Court of Appeals decided the case of *Dole v Dow Chem. Co.* (30 NY2d 143, *supra*). *Dole* abolished the active-passive negligence test and sutstituted therefor what is called a right of "partial indemnification". Although in a later case the court called the doctrine one of "relative contribution" *(Kelly v Long Is. Light. Co.,* 31 NY2d 25, 29), it had its foundation in the judicial expansion of the indemnity theory (see *Gates-Chili Cent. School Dist. v State of New York,* 55 AD2d 44, 45-46; *Adams v Lindsay,* 77 Misc 2d 824, 825-826; *Zillman v Meadowbrook Hosp. Co.,* 73 Misc 2d 726, 729-730, revd on other grounds 45 AD2d 267; 2A Larson, Workmen's Compensation Law, § 76:22, p 14-319; and § 76:44, p 14-403; see, also, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3019:34, p 236), and not in any alteration of the rules of contribution which were then fixed by statute (CPLR former 1401).[2] Unlike contribution, the *Dole* partial indemnity claim did not require that the injured party recover a joint judgment against both tort-feasors and it did not apportion liability on a pro rata basis. Rather, the *Dole* claim could be asserted in a third-party action and resulted in an equitable apportionment between the joint tort-feasors based upon their relative degrees of fault in causing the injuries complained of by the prime plaintiff (30 NY2d 143, 147, *supra*). As one law review note explained the *Dole* decision:

"The Court of Appeals has in effect expanded the traditional right of implied-in-law indemnity to remedy the restrictive and criticized qualities of CPLR section 1401. The plaintiff at his whim can no longer place the burden of a whole judgment on one defendant where two or more are actually responsible.

---

2. CPLR 1401 has since been amended to permit a *Dole* claim under the name of contribution (L 1974, ch 742, § 1).

The extreme alternatives of pro rata share or full indemnification have been refined by *Dole* into comparative negligence between defendants.

"This dramatic change in the law springs from manipulation of indemnity, which traditionally was a right derived from common law as opposed to statue. Traditionally, a defendant tortfeasor's right to indemnity took precedence over a concurrent right to contribution. These two factors substantiate the validity of the Court of Appeals applauded move to correct the deficiencies of the law of contributions between joint tortfeasors. *Dole* safely stays within the bounds of judicial authority and refrains from stepping too harshly on legislative toes, because it was within the sphere of the court to make new substantive law from the common law doctrine of indemnity." (Note, The New Right of Relative Contribution: *Dole v Dow Chemical Co.,* 37 Albany L Rev 154, 170.)

The effect of the *Dole* case in relation to the instant contract of insurance was to give rise to a new insurable risk, that Green Bus might be subjected to a third-party action seeking equitable apportionment of responsibility for tortious injury to one of its employees. Thus, the question now before us is whether the policy should be construed to either cover or exclude that risk which was nonexistent at the time of the making of the contract.

■■ It is the general rule that exceptions to coverage and words of limitation in the nature of an exception are to be strictly construed against the insurer where they are of uncertain import or reasonably susceptible of a double construction (*Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386, 390-391; *Hartol Prods. Corp. v Prudential Ins. Co.,* 290 NY 44, 49; *Hoffman v Aetna Fire Ins. Co.,* 32 NY 405, 413-414; 1 Couch, Insurance 2d, § 15:92). In this case, however, the words used in the second part of exclusion (j) are not in any sense ambiguous. Their meaning is clear that it was the intent of the parties to exclude from coverage the only type of derivative liability which the law then provided that Green Bus might incur to indemnify another for damages arising out of injury to one of its employees, namely common-law full indemnity. In the absence of ambiguity the rule requiring the adoption of a construction of an exception clause in favor of the insured does not apply.

■ An insurance policy is a contract which is to be construed according to the rules governing the construction of

contracts generally (1 Couch, Insurance 2d, § 15:15; *Kean v National Sur. Co.,* 241 NY 252, 258; *Royster Guano Co. v Globe & Rutgers Fire Ins. Co.,* 252 NY 75, 84). In his treatise Professor Corbin had occasion to comment on the occurrence of contingencies unforeseen by the parties, stating:

"In order to determine the 'legal operation' of a contract, it is necessary to know what the courts will do in all the possible contingencies of performance or non-performance. Sometimes these contingencies are foreseen and provided for by the parties in making their agreement. In more instances, however, the contingencies that actually later occur are not foreseen by the parties, or at least are not provided for in any way by them. Yet, in such cases the courts have to determine the rights and wrongs of the matter, the remedies to be awarded, what the parties ought to have done and ought not to have done. This is what is meant by 'legal operation' of the contract. These are the 'legal relations' that are created by the contract and the subsequent events." (3A Corbin, Contracts, § 622, p 2.)

"In order to prevent the disappointment of expectations that the transaction aroused in one party, as the other had reason to know, the courts find and enforce promises that were not put into words, by interpretation when they can and by implication and construction when they must. When unforeseen contingencies occur, not provided for in the contract, the courts require performance as men who deal fairly and in good faith with each other would perform without a law suit. It is thus that unanticipated risks are fairly distributed and a party is prevented from making unreasonable gains at the expense of the other. This is not making a contract for the parties; it is declaring what the legal operation of their own contract shall be, in view of the actual course of events, in accordance with those business mores known as good faith and fair dealing." (3 Corbin, Contracts, § 541, p 97.)

It is manifest that the parties at the time of entering into the contract of insurance had no specific intent to either include or exclude from coverage an obligation of Green Bus to partially indemnify another on a *Dole* theory for damages arising out of injury to one of its employees for the simple reason that no such cause of action was then recognized at law. The instant third-party actions assert just such claims for either full or partial indemnification. We must therefore look to the general purpose of the policy to determine upon which

party the risk of a duty to pay a *Dole* indemnification claim should fall, the insured or the insurer.

A reading of the policy establishes that its primary purpose was to insure Green Bus against liability to third persons arising out of the ownership and use of its garage and general offices. The risks of all liability to employees or derivatively to others for damages arising out of injuries to such employees sustained at the workplace and in the course of their employment were carefully excluded. Applying the functional analysis test to separate lines of insurance utilized by the Court of Appeals in *Graphic Arts* (45 NY2d 551, 558, *supra),* it may be said that such risks are more properly insured as part of an employer's liability policy (which is written primarily to secure the policyholder against his common-law liability for injuries resulting to employees [see Appleman, Insurance Law and Practice, § 4571; Insurance Law, § 46, subd 15; 11 Couch, Insurance 2d, § 44.13]), than they are under the instant type of premises liability policy.

■ In the final analysis, the most important factor is that since the parties carefully excluded from coverage the obligation of Green Bus to fully indemnify another for damages arising out of injury to one of its employees, Green Bus should now have no legitimate expectation that the policy would require Consolidated to cover the lesser obligation to pay partial indemnification. In the case of full indemnification the active negligence of Green Bus would have been the sole cause of the accident whereas with partial indemnification its negligence would have combined with that of another to produce injury to the employee. The greater obligation having been excluded, a fortiori the lesser was also excluded. This is in accord with the cases cited above which have held that a *Dole* cause of action has its roots in the same implied-in-law contract that underlies full indemnity *(Gates-Chili Cent. School Dist. v State of New York,* 55 AD2d 44, 45-46, *supra; Adams v Lindsay,* 77 Misc 2d 824, 825-826, *supra; Zillman v Meadowbrook Hosp. Co.,* 73 Misc 2d 726, 729-730, revd on other grounds 45 AD2d 267, *supra).* A *Dole* recovery therefore is merely a form of indemnification which the second part of exclusion (j) should be construed to include within its ambit.

Accordingly, the judgment appealed from should be affirmed.

HOPKINS, J. P., TITONE and MANGANO, JJ., concur.

Judgment of the Supreme Court, Queens County, dated October 18, 1977, affirmed, with costs.